(52 Misc. Rep. 528)

### BRUN v. NORTHWESTERN REALTY CO.

(Supreme Court, Appellate Term. February 11, 1907.)

CORPORATIONS—ACTION AGAINST—PROCESS—SERVICE.

Code Civ. Proc. § 431, subd. 3, provides that summons may be served upon a domestic corporation by delivering a copy thereof to a "managing agent." In an action against a domestic corporation, it appeared from plaintiff's affidavit that M., upon whom summons was served, had executed contracts with plaintiff by signing the name of the corporation, that the contracts had been entered into between plaintiff and M. without consultation with any of the company's officers, that whenever plaintiff had desired to learn anything, or asked for payment, he had been referred to M., that on one occasion, without consulting any one, M. had ordered the drawing of a check in favor of plaintiff and caused it to be signed by the company's president. M. swore that he was employed as a foreman of the corporation and held no higher office. *Held*, that the service was good.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, § 1988.]

MacLean, J., dissenting.

Appeal from City Court of New York.

Action by Clement B. Brun against the Northwestern Realty Company. From an order granting a motion by defendant for an order vacating and setting aside a judgment entered on defendant's default, and setting aside the service of a summons, plaintiff appeals. Reversed, and motion denied, and judgment reinstated below.

Argued before GILDERSLEEVE, MacLEAN, and AMEND, JJ.

Frederick S. Jackson, for appellant.

Morris H. Hayman, for respondent.

AMEND, J. The defendant is a corporation, and the plaintiff claims service was made upon it by delivering the summons to one William Max. A previous motion to set aside the service upon said Max was denied on November 16, 1906, without prejudice to a renewal. The second application was brought on November 21, 1906, but previously, on November 17, 1906, the decision in the first motion appeared in the Law Journal, and the order was entered November 17, 1906, and judgment entered on November 19, 1906. The affidavits used by the plaintiff in opposing the first motion were used upon the last motion.

The question in the case is whether service on Max was service on the defendant corporation. In his opposing affidavit, the plaintiff avers: That on January 16, 1906, said Max signed a contract with deponent in the following manner: "Northwestern Realty Company, per Ezra Max, President." That on May 15, 1906, the said Max signed another contract with deponent, as follows: "Northwestern Realty Company, per William Max." The plaintiff further avers: That no

negotiations as to terms had been had previous to the signing of the contract, and that the terms were agreed upon and the contract drawn up and signed on the spot in each instance by said William Max without consultation with any of the company's officers, or with any other person. That whenever plaintiff wished to learn anything, or asked for payment, he was referred to William Max. That when he asked Ezra Max, the president of the company, for a payment on account, said Max told him to wait until William Max came, and that upon similar requests by other people all were told to wait for William Max. That said William Max agreed to give him $200, and without consulting anybody ordered the stenographer to draw a check for that amount and had Ezra Max sign it as president, and that as to the other payments nobody had anything to do with them other than William Max, except as Ezra Max signed them. That the sign on the office door of the defendant's company read: "Northwestern Realty Company. E. & W. Max." That in an application for a building permit, filed on August 29, 1906, plaintiff stated that William Max was secretary of the defendant company, the owners thereof, and that the name of William Max, as secretary, was given him over the telephone by Ezra Max. That subsequently, on October 3, 1906, he applied for a permit for the other houses, and he was not informed that there was not a change in the secretaryship of the company. That William Max was the one who had general charge of the defendant's affairs. That he is familiar with the duties of the foreman, which William Max claims to be, and that the duties he performed are much higher than those intrusted to a foreman. That he knew Raldaris as superintendent, and that said Raldaris has always acted in recognition of William Max as superior. Schafer, an associate of the plaintiff, makes affidavit that he was present when both contracts alluded to in the plaintiff's affidavit were signed. He further says that the terms were discussed at each of said meetings as if for the first time, that William Max consulted with nobody as to the signing of the said contracts, and that William Max signed them, to all appearances, on his own authority. The affidavits for the plaintiff were verified on the 15th day of November, 1906. The affidavits on the part of the defendant are all verified on the 20th day of November, 1906, five days after the other affidavits.

It is worthy of note that in the affidavits submitted in opposition by Max Gotthelf and Hayman none of the allegations in the plaintiff's affidavits are denied. William Max swears that he was employed as a foreman of the company and is and was neither an officer, nor stockholder, nor managing agent of the corporation. Samuel Gotthelf says he is treasurer of the company, and that William Max was neither an officer nor managing agent thereof. Morris H. Hayman, attorney for the company, states that said Max was not and had not prior to the service of the summons been an officer of the company, nor its managing agent. These averments are more in the nature of conclusions than statements of fact. "Under the provisions of the Code of Civil Procedure in regard to the service of summons upon a foreign corporation, which authorizes the service by delivery of a copy to 'a managing agent' of the corporation within the state, it is not necessary that the office of the person to whom the copy is delivered should be precise-

ly described as 'managing agent'; but it was intended that any person holding some responsible and representative relation to the company, such as the term 'managing agent' would include, might be served." Coler v. P. B. Co., 146 N. Y. 281, 40 N. E. 779. The evidence clearly preponderates in favor of the plaintiff's contention that William Max was, at the time service was made upon the defendant, the managing agent, and justifies the conclusion that his position was within the meaning of section 431, subd. 3, of the Code, and service upon him was, therefore, service upon the defendant.

Order reversed, with $10 costs and disbursements, and motion denied, with $10 costs, and judgment reinstated in the court below.

GILDERSLEEVE, J., concurs.

MacLEAN, J. (dissenting). With the learned justice of the City Court I agree that upon the affidavits submitted he was constrained to grant the motion. In the present state of the law in the service of process, as well as in other transactions with corporations, persons must make sure that the individuals with whom they assume to deal are actually the officers or functionaries supposed. The argument that it would be a hardship to apply the statute of the state, instead of a judge-made law to fit the case, is seldom cogent; here the less so, inasmuch as the president of the corporation was easily findable at the company's office, where he had been seen frequently by the plaintiff himself. Adoption of acts of William Max, foreman, in matters not commonly committed to a foreman, did not appoint him manager, or qualify him to be the recipient of process.